IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CHELSEA L. CONNOR, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2-04-CV-280 (TJW) |
| | § | |
| SONOCO PRODUCTS COMPANY, | § | |
|     Defendant. | § | |
| | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

    Before the Court is Defendant's Motion for Summary Judgment (Doc. # 22). After considering the filings of the parties and the applicable law, the Court ORDERS that the defendant's motion be GRANTED for the reasons expressed below.

**I.    Factual Background**

    This civil rights case arises out of alleged retaliation against Plaintiff Chelsea L. Connor by Defendant Sonoco Products Company. In June 1998, the plaintiff began her employment as a temporary employee for the defendant at its plant in Jefferson, Texas. The plaintiff later accepted a full-time position building reels in June 1999. On May 7, 2001, the plaintiff filed a charge of sexual harassment with the United States Equal Employment Opportunity Commission ("EEOC"). The EEOC notified Chuck Kendrick ("Kendrick"), the defendant's Personnel Manager, of the plaintiff's charge on May 8, 2001. The next day, the EEOC dismissed the charge and issued a notice of right to sue because the plaintiff failed to cooperate in the investigation of her charge.

    The plaintiff filed a sexual harassment lawsuit against the defendant in August 2001. In response to the plaintiff's harassment claim, the defendant lodged an investigation a year later, which was conducted by Kendrick, Bill Waller ("Waller"), Regional Human Resources Manager,

and Henry Henderson ("Henderson"), Plant Manager. The investigation resulted in the defendant taking disciplinary action against the alleged harassers. The defendant was finally served with the plaintiff's suit in August 2003, and in October of that year, this Court dismissed the suit without prejudice for lack of subject matter jurisdiction.

On Friday, November 7, 2003, the plaintiff was involved in an altercation with another employee named Annjeanetta Burns ("Burns"). The plaintiff and Burns got into an argument over the assembly of a reel, and Burns struck the plaintiff with a board. Following the altercation, Kendrick told the plaintiff and Burns to leave the plant. Later that day, the plaintiff went to the emergency room, was treated for an injury to her right forearm, and was released without any work restrictions. An investigation into the incident revealed that the plaintiff's failure to communicate with Burns and her repeated aggravation of Burns contributed to the altercation. The defendant subsequently terminated Burns' employment because of the altercation, but permitted the plaintiff to return to work.

On Monday, November 10, 2003, the plaintiff returned to the emergency room for treatment. The treating physician released the plaintiff and provided her with a written notice stating that she could not return to work until November 13. On November 11, the plaintiff left a voice mail message for Kendrick informing him that she would not be reporting to work because of her injury. The plaintiff did not report to work the next day; however, she failed to notify Kendrick or anyone else that she had been restricted from working by her physician. On November 13, the plaintiff also failed to report to work and failed to notify anyone of her absence, even though she was no longer under any work restrictions. That same day, the plaintiff sought medical treatment from a chiropractor named Dr. Myron. During the plaintiff's visit to his office, Dr. Myron restricted the

plaintiff from returning to work until November 24. The plaintiff subsequently notified Kendrick of her work restrictions. On November 25, Kendrick wrote a letter to the plaintiff notifying her that in light of her injury, she was being offered a temporary work assignment. Kendrick offered the plaintiff the position of Stenciler Assistant at her current rate of pay, which the plaintiff accepted.

The plaintiff finally returned to work on December 4, 2003. That same day, the plaintiff received a final disciplinary warning for failing to communicate with her coworkers and for ignoring her supervisor's instructions. During her employment with the defendant, the plaintiff had been warned several times about her failure to comply with company policies and procedures. The plaintiff received her first warning on July 2, 2002, for repeatedly being late to meetings. She also received a warning on May 22, 2003, for being late to meetings and for failing to promptly return to her work station after breaks. On December 8, 2003, the plaintiff attended a meeting with Henderson and Kendrick, at which time she was informed that she would be terminated if she continued to ignore her supervisor's instructions. From June 2002 to January 2004, moreover, the plaintiff's supervisors placed 13 notes in the plaintiff's personnel file documenting infractions such as repeatedly returning late to work after lunch breaks, throwing a board on another employee's hand, failing to pay attention to her work, and disregarding her supervisors' instructions.

On January 12, 2004, the plaintiff left the plant before the end of her shift without telling her supervisor, contrary to the defendant's employee conduct policy. The plaintiff's immediate supervisor at the time was Scott Whatley ("Whatley"). While "clocking out" from her shift, the plaintiff happened to see Bertha Abraham ("Abraham"), her former immediate supervisor, and informed Abraham that she was leaving for a doctor's appointment. The plaintiff never told Whatley that she needed to leave work early because of her appointment. She also left before the

end of her shift and without informing Whatley on January 14. Again, the plaintiff saw Abraham while "clocking out" and told her that she was leaving for a doctor's appointment.

Later that day, Whatley asked Kendrick if he knew where the plaintiff was. Kendrick had no idea where the plaintiff was, so he checked her personnel file for an Advance Notification form. This form, which is completed by the employee prior to a scheduled appointment, excuses the employee from work. The plaintiff had submitted the forms in the past, but failed to do so on January 12 and 14. After Kendrick discovered that the plaintiff had not submitted a form, he called Waller who told him to fire the plaintiff unless she had a good explanation for leaving work without notifying her supervisor. On January 15, Kendrick and Henderson informed the plaintiff that she was being discharged because she failed to notify her supervisor that she was leaving before the end of her shift.

The plaintiff subsequently filed suit in state court alleging retaliatory discharge in violation of 42 U.S.C. §2000e *et seq.* ("Title VII"). The plaintiff has also asserted state law claims for workers' compensation-related retaliatory discharge and negligence. The defendant timely removed the action to this Court.

## II.     Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is appropriate " in *any* case 'where the critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.' " *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th

Cir. 1994) (quoting *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993)). All evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

### III.     Discussion

#### A.     Title VII – Retaliation Claim

To establish a *prima facie* case of retaliation, a plaintiff must prove the following elements: (1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; (3) and a causal connection between the protected activity and the adverse employment action. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 705 (5th Cir. 1997). An employee has engaged in activity protected by Title VII if she has either (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). Further, the employee must show the she had at least a "reasonable belief" that the practices she opposed were unlawful. *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). Once the plaintiff establishes a *prima facie* case of retaliation, the defendant must articulate a legitimate, non-retaliatory reason for the adverse employment action. *Sherrod v. American Airlines*, 132 F.3d 1112, 1122 (5th Cir. 1998). The burden then shifts to the plaintiff to proffer sufficient evidence that would permit a reasonable trier of fact to establish that the defendant's reason is a pretext for retaliation. *Id.*

Here, the defendant contends that the plaintiff cannot satisfy the final element of her *prima*

*facie* case – a causal connection between the protected activity and the adverse employment action.[1] For the purposes of this summary judgment motion, the Court assumes that the plaintiff can establish a *prima facie* case. The defendant has proffered a legitimate, non-retaliatory reason for discharging the plaintiff – her failure to notify her supervisor that she was leaving before the end of her shift.

The Court must now determine whether the plaintiff has met her burden of proffering sufficient evidence that would permit a reasonable trier of fact to establish that the defendant's reason is a pretext for retaliation. The plaintiff has not met her burden in this case. Here, the plaintiff has admitted that in January 2004, she twice left the plant before the end of her shift without notifying her supervisor. Exhibit 1 at 73 and 77 attached to Defendant's Motion. According to the defendant's employee conduct policy, an employee can be immediately discharged without warning for leaving the plant without authorization. Exhibit 1 at 2 attached to Defendant's Motion. In June 1999, the plaintiff received a copy of the employee conduct policy and signed an acknowledgment stating that she had received the same. *Id.* at 3.

The plaintiff had also been warned and disciplined several times for a variety of infractions beginning in June 2002. The plaintiff's personnel file reveals documented infractions such as repeatedly returning late to work after lunch breaks, throwing a board on another employee's hand, failing to pay attention to her work, and disregarding her supervisors' instructions. In November 2003, moreover, the plaintiff was involved in an altercation with another employee. It is a violation of the defendant's employee conduct policy for employees to fight or to provoke or instigate a fight with another employee on the company's premises. Exhibit 1 at 1 attached to Defendant's Motion.

---

[1] The defendant also contends that the plaintiff's Title VII claim is barred because she failed to exhaust administrative remedies. The Court declines to rule on this issue, and instead, disposes of the plaintiff's claim on the merits.

An employee's violation of this policy results in immediate discharge without warning. *Id.* Here, the plaintiff was found to be a contributing or aggravating factor in the altercation with Burns. Exhibit B5 at 2 attached to Plaintiff's Response. The plaintiff's role in the altercation was grounds for immediate termination. However, the plaintiff continued working for the defendant while Burns was discharged.

In addition, on at least two occasions, the plaintiff failed to provide advance notice to her supervisors of her need to be absent from work in violation of company policy.[2] The plaintiff has admitted that she did not call Kendrick on November 12, 2003, to let him know that she would be absent from work that day. Exhibit A at 58 attached to Defendant's Motion. She also never informed Kendrick that she would not be reporting to work on November 13, 2003. *Id*. at 59-60. According to the employee conduct policy, an employee can be immediately discharged without warning for "[f]ailure to notify supervision, when necessary to be absent, at least one hour in advance of reporting time unless prevented by justifiable circumstances." Exhibit 2 at 2 attached to Defendant's Motion. Despite violating this policy, the plaintiff was not discharged. Prior to finally discharging the plaintiff, moreover, Henderson and Kendrick met with the plaintiff in December 2003, and explained to her that she would be fired if she continued to disregard her supervisor's instructions.

Viewing the evidence in a light most favorable to the plaintiff, the Court concludes that the plaintiff cannot establish that the defendant's proffered reason for discharging her is a pretext for retaliation. The plaintiff violated the defendant's policies on several occasions prior to her discharge

---

[2] The summary judgment evidence shows that the plaintiff left a voice mail message for Kendrick providing advance notice of her absence on November 11, 2003. Exhibit T at 2 attached to Plaintiff's Response.

in January 2004. Instead of immediately discharging the plaintiff as permitted by company policy, the defendant permitted the plaintiff to continue working. A month before she was discharged, the plaintiff received a final disciplinary warning and learned in a meeting that she was in jeopardy of being fired if she failed to heed instructions from her supervisors. The plaintiff has not produced any evidence that another employee had similarly violated the defendant's policies and was not discharged. The Court therefore concludes that the plaintiff has failed to establish that the defendant's proffered reason for discharging her is a pretext for retaliation.

### B.   Workers' Compensation – Retaliation Claim

Under Section 451.001 of the Texas Labor Code, a person may not discharge or discriminate against an employee who files a workers' compensation claim in good faith. *McIntyre v. Lockheed Corp.*, 970 S.W. 2d 695, 697 (Tex. App. – Fort Worth 1998, no pet.) (citing Tex. Labor Code Ann. § 451.001 (Vernon 1996)). To recover for retaliatory discharge, the plaintiff must prove that the discharge would not have occurred but for her filing of a workers' compensation claim. *Id.* (citing *Continental Coffee Prods. v. Cazarez*, 937 S.W. 2d 444, 450 (Tex. 1996)). It is the plaintiff's burden to show a causal link between the discharge and the filing of the workers' compensation claim. *Id.* This causal connection, which may be established by direct or circumstantial evidence, is an element of the plaintiff's *prima facie* case. *Id.* Once the plaintiff establishes the causal link, the burden shifts to the employer to proffer a legitimate reason for the discharge. *Id.* To survive a motion for summary judgment, the plaintiff must then produce "controverting evidence of a retaliatory motive." *Id.*

To establish a causal link between her discharge and the filing of her compensation claim, the plaintiff may produce evidence of the following: "(1) knowledge of the compensation claim by

those making the decision on termination; (2) expression of a negative attitude toward the employee's injured condition; (3)failure to adhere to established company policies; and (4) discriminatory treatment in comparison to similarly situated employees." *Id.* (citing *Palmer v. Miller Brewing Co.*, 852 S.W. 2d 57, 61 (Tex. App. – Fort Worth 1993, writ denied)).  Here, the plaintiff has established knowledge on the part of the decisionmaker.  Waller, as Regional Human Resources Manager, authorized Kendrick and Henderson to discharge the plaintiff.  The plaintiff's summary judgment evidence shows that Waller had knowledge of the plaintiff's claim for workers' compensation benefits as of November 17, 2003.  Exhibit T at 4 attached to Plaintiff's Response.

The plaintiff, however, does not even allege any expression of a negative attitude toward her injured condition, failure to adhere to established company policies, or discriminatory treatment in comparison to similarly situated employees.  The Court therefore concludes that the plaintiff has failed to establish a causal link between her discharge and the filing of her compensation claim.  However, assuming the plaintiff had established a causal link, the defendant has articulated a legitimate, nondiscriminatory reason for the plaintiff's discharge, and as mentioned earlier, the plaintiff has failed to produce controverting evidence of a retaliatory motive.

### C.     Negligence Claim

The plaintiff has also asserted a state law claim for negligence.  The defendant contends that the plaintiff's negligence claim is barred by the exclusive remedy provision of the Texas Workers' Compensation Act ("TWCA").  Under the TWCA, an employee's exclusive remedy against an employer covered by workers' compensation insurance for a work-related injury is the recovery of workers' compensation benefits.  *Cook v. Fidelity Invs.*, 908 F. Supp. 438, 441 (N.D. Tex. 1995). The TWCA bars actions by employees against employers for negligence and gross negligence.

9

*Cook*, 908 F. Supp. at 441 (citing *Rodriguez v. Naylor Indus., Inc.*, 763 S.W.2d 411, 412 (Tex. 1989)). Here, the plaintiff does not dispute that the defendant is a subscriber to the Texas Workers' Compensation System. The plaintiff was injured in the course and scope of her employment; thus, her negligence claim is barred under the TWCA. *See Cook*, 908 F. Supp. at 441 (citing *Ajaz v. Continental Airlines*, 156 F.R.D. 145, 148-150 (S.D. Tex. 1994)).

### III.  Conclusion

The Court has reviewed the summary judgment evidence before it and the applicable law. With respect to the plaintiff's retaliatory discharge claim under Title VII, the Court concludes that the plaintiff has failed to establish that the defendant's proffered reason for discharging her is a pretext for retaliation. The Court further concludes that the plaintiff has not established a causal link and has not produced controverting evidence of a retaliatory motive to support her claim for workers' compensation-related retaliatory discharge. Finally, the Court concludes that the plaintiff's negligence claim is barred by the TWCA. Accordingly, the defendant's motion for summary judgment is GRANTED.

SIGNED this 30th day of June, 2005.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE